### G. L. WEBSTER CO., Inc., v. TRINIDAD BEAN & ELEVATOR CO.

No. 4177.

Circuit Court of Appeals, Fourth Circuit.

Sept. 27, 1937.

William G. Maupin and James E. Heath, both of Norfolk, Va. (Otto Lowe, of Cape Charles, Va., on the brief), for appellant.

James G. Martin, of Norfolk, Va., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

NORTHCOTT, Circuit Judge.

This is an action at law instituted by the appellee, the Trinidad Bean & Elevator Company, a corporation chartered under the laws of the State of Colorado, here referred to as the plaintiff, in the District Court of the United States for the Eastern District of Virginia at Norfolk, in October, 1935, against the appellant, G. L. Webster Company, a Virginia corporation, here referred to as the defendant. A trial was had before a jury in October, 1936, and a

verdict returned for the plaintiff in the sum of $3,762.79, with interest from April 1, 1935. A motion was made on behalf of the defendant to set aside the verdict which motion, after being argued, was overruled, and on December. 21, 1936, an order was entered giving judgment for the plaintiff in the sum of $3,762.79, with interest thereon from the 29th day of October, 1936, together with the costs. From this action this appeal was brought.

The controversy grew out of a sale, by the plaintiff, doing business in California, to the defendant, of three thousand bushels of baby lima beans, after an exchange of telegrams, in September 1934. Following the agreement reached by means of these telegrams, the plaintiff forwarded the defendant a written contract with regard to the sale which was not returned, the president of the defendant claiming that it was mislaid. On October 10, 1934, the plaintiff forwarded the defendant another written contract stating that it was a duplicate of the one first sent which latter contract was signed by the president of the defendant company and returned to the plaintiff. This contract contained, among other provisions, two which were not incorporated in the first contract sent. One of these provisions was to the effect that the seller gave no warranty, express or implied, as to description, quality, or productiveness and the other to the effect that the buyer agreed to reimburse the seller for any taxes that might be imposed with respect to the sale.

The written contract provided that the beans in question should be sold subject to delivery f. o. b. dock, at a Pacific Coast port, their carriage to be by water and that the buyer should have the right of inspection at the point of shipment. In the absence of such inspection by the buyer seller had the right to have the goods inspected, on dock before loading, by an inspector of the Chamber of Commerce of San Francisco or of the Los Angeles Grain Exchange, a quality certificate issued by either of said inspectors to be final and conclusive as to grade, quality, and condition of the beans at the time of shipment. The destination of the shipment was given as Norfolk and it was provided that diversion of the shipment would signify acceptance.

The beans were delivered, some at the San Francisco dock and some at the Los Angeles dock, and duly inspected by an inspector at each point and a certificate was given to the effect that the beans were up to the standard in grade, quality, and condition.

On the arrival of the shipment at Norfolk, Virginia, the agents of the defendant procured the unloading of the beans and their reshipment by the Pennsylvania Railroad Company to Cheriton, Virginia, the defendant's place of business. This was done without the knowledge or consent of the plaintiff and without notice. After the goods arrived at Cheriton they were inspected by a deputy state inspector with the aid of three employees of the defendant. The defendant claimed that this inspection disclosed the fact that the beans were not up to the standard agreed upon and notified the plaintiff that the shipment would not be accepted. The plaintiff thereupon retook possession of the beans and sold them at an alleged loss of $3,768.29. The undisputed evidence is that the market price of beans of the kind sold had declined between the date of the contract of sale and the arrival of the shipment at Cheriton.

The sole question involved is whether the defendant breached the contract of sale, and if so whether the plaintiff was entitled to recover damages in the action brought.

The evidence discloses that the officers of the defendant company knew, when negotiating for the purchase of the beans, that they were buying commercial beans and not selected seed beans; that the defendant had purchased beans from the plaintiff on two former occasions and they knew its method of doing business; that they knew a written contract covering details would be necessary after the price, quantity, and time of shipment had been agreed upon by telegram and correspondence; and that the defendant purchased the commercial beans rather than the seed beans because of the cheaper price.

Where negotiations had been entered into with regard to a transaction and it is understood that the contract as finally agreed upon is to be reduced to writing, all of the agreements made between the parties are presumed to be incorporated in the written contract when finally executed by both parties. The parol evidence rule as stated in Restatement of the Law of Contracts, A.L.I. § 237, is that "the integration of an agreement makes inoperative to add to or to vary the agreement * * * all prior oral or written

agreements relating thereto." From the evidence as shown in the record the written agreement signed by both the plaintiff and the defendant embodied the contract of sale for the beans and the defendant was bound by it.

It is true that, when he testified, the president of the defendant company said that he signed the written agreement without noticing the clause stipulating that the seller gave no warranty and that he did not notice the provision as to taxes but on cross-examination he would not state positively that he had not read it before signing it. His statement was: "I doubt very much that I read it." Had the witness testified positively that he signed the contract without reading it, it would not have relieved the defendant from liability. One cannot enter into a contract and, when called upon to abide by its conditions, say that he did not read it, when he signed it, or did not know what it contained. Williston on Contracts, § 35 and numerous authorities there cited.

A careful reading of the evidence of the president of the defendant company leads us to the conclusion that the jury was clearly right in reaching a verdict for the plaintiff. The first contract sent by the plaintiff which this witness testified was mislaid was afterwards found in the files of the defendant company; the witness had signed two other contracts with the plaintiff containing the identical provisions complained of here, which were plainly inserted on the first page of the contract, and knew that the plaintiff did not deal in seed beans but commercial beans only. He was cognizant of all details of the contract as to delivery and inspection. There was ample evidence to justify the verdict of the jury and to justify the fixing of the damages in the amount stated in the verdict.

The commerce of this vast country could not be carried on if written contracts of the character of the one here, plain and unambiguous in its terms, could be breached at will without any resulting liability.

There are a number of assignments of error as to the action of the trial judge in giving or refusing to give certain instructions but an examination of the instructions, taken together with the judge's charge, leads us to the conclusion that there is no merit in these points. The charge of the judge was more than fair to the defendant.

Questions were raised in the argument as to the admission of certain evidence but, as shown by the record, no proper exceptions were taken to the admission of this evidence at the time it was offered. There was no harmful error in the trial.

The point was raised in the brief on behalf of the plaintiff that there was a discrepancy between the verdict of the jury and the order of the court as to the date at which interest should begin to run, but there is no cross-appeal on behalf of the plaintiff and there is nothing in the record to show why this change was made or that this point was raised in the trial court. We cannot properly consider this question here, for the first time.

The judgment of the court below is affirmed.

Affirmed.