**Larry McCALL–BEY, Plaintiff,**

v.

**Gayle FRANZEN, et al., Defendants.**

**No. 80 C 4678.**

United States District Court, N.D. Illinois, E.D.

June 27, 1985.

Larry McCall-Bey, pro se.

Neil F. Hartigan, Atty. Gen. of Ill. by Theodore Karavidas, Asst. Atty. Gen., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff in this case, Larry McCall-Bey, has moved this Court for an order to enforce settlement pursuant to the Court's dismissal of this cause on September 4, 1984 and the Court's retention of jurisdiction to enter any appropriate order pending completion of the details of the parties' settlement agreement.

## I. FACTS

On May 14, 1984, this Court granted plaintiff's motion for partial summary judgment on his constitutional claims arising out of an incident which occurred at the Menard Correctional Facility on June 23, 1977. *McCall-Bey v. Franzen*, 585 F.Supp. 1295 (N.D.Ill.1984). Plaintiff, then an inmate at Menard, had been accused of deviate sexual assault against another inmate and, following an administrative hearing, was placed in segregation and reduced in grade. This Court, citing *Hayes v. Walker*, 555 F.2d 625 (7th Cir.1977) and *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir.1981), found that the prison's Adjustment Committee had violated plaintiff's constitutional rights by failing to provide adequate reasons for its finding of plaintiff's guilt and subsequent punishment.

After the Court's decision in May, the parties reached a settlement agreement in principle in September 1984. The cause was dismissed on September 4, 1984, with jurisdiction retained to allow the parties to continue negotiating the final written settlement agreement. At that time the plaintiff was an inmate at the Dixon Correctional Center. The parties began part performance of the agreement when the Department of Corrections assigned plaintiff to the work release program at the Metropolitan Chicago Community Correctional Center ("Metro") on September 12, 1984 so that he could begin his studies at Roosevelt University in Chicago. On October 5, 1984, the Court extended its jurisdiction to permit the parties to finalize the settlement agreement.

The settlement agreement, dated December 8, 1984, provides, in part, that plaintiff would be assigned to a work release program so that he could attend college in Chicago. Defendant's Exh. 1, at ¶ 1. The Department of Corrections further agreed to waive its normal requirement that an inmate spend the first seven days in the

work release center orientation program. Instead, plaintiff was allowed to begin attending classes "as soon as practicable." *Id.* In exchange, plaintiff agreed to obey all "rules and regulations of the work release program, as well as all Illinois Department of Corrections rules." *Id.* at ¶ 6. Plaintiff also agreed that if he was "disciplined for violating any of the terms of (sic) conditions in this agreement or any above-mentioned rule or regulation, [his] assignment to work release may be terminated, according to applicable Department of Corrections Rules." Once terminated from the work release program, plaintiff agreed to surrender himself to the Department of Corrections "for incarceration in any correctional center selected by the Department of Corrections, and ... remain incarcerated for the remainder of [plaintiff's] prison term, good time excepted." *Id.* Although dated December 8, 1984, the terms of the settlement agreement were effective September 12, 1984. *Id.*

On October 29, 1984, plaintiff, while at Metro, received a Resident Disciplinary Report charging him with violations of DR–504C–102 (assaulting any person); DR–504C–105 (dangerous disturbance); DR–504C–203 (drugs and drug paraphernalia); DR–504C–206 (intimidation or threat); and DR–504C–403 (disobeying a direct order). Defendants' Exh. 10. Specifically, the report states that during a routine search of plaintiff at the Metro, plaintiff was told to "drop his pants below his knees." Plaintiff was then told to "reach inside the crotch of his shorts and turn it inside out." Plaintiff refused. After being informed that he would be subject to a complete search by Metro officials, the report states that plaintiff "reached inside of his underwear crotch and removed an object covered with paper." Plaintiff then "put the item in the commode and flushed it." While the officer attempted to retrieve the item, the officer states that plaintiff "started wrestling with me to keep me from retrieving the item." Plaintiff then flushed some cigarette papers down the drain and a "scuffle" ensued between plaintiff and the officer.

Plaintiff was then handcuffed. Defendants' Exh. 10.

On November 1, 1984, the prison Adjustment Committee convened to hear plaintiff's Disciplinary Report. The "Record of Proceedings" states:

Resident stated to Committee that he was not guilty and that he did not take off his shorts because the shorts would have torn. Resident also stated that he told CRC Doby that he would take off everything [illegible].

The Adjustment Committee found plaintiff guilty of the violations charged, and gave the following reasons:

[Illegible] besides Disciplinary Report. Admission of Resident not taking off his shorts when ordered by CRC Doby lead the Committee to believe that violation was committed as charged.

The Adjustment Committee ruled that: (1) 60 days of plaintiff's good time be revoked; (2) plaintiff be demoted to "C" level for 60 days; and (3) plaintiff be reincarcerated and segregated for 60 days. "Other punishment" is indicated on the report, but this segment of the report is illegible. See Defendants' Exh. 11. On November 12, 1984, plaintiff was placed in segregation at Joliet Correctional Center and on November 15, 1984, the Director of Joliet Correctional Center, Mr. Michael Lane, approved the Adjustment Committee decision in part by revoking only 10 days of the recommended 60 for good conduct. On November 23, 1984, plaintiff filed a pro se motion to reinstate the cause of action, which the Court granted.

On November 28, 1984, plaintiff's grievance was heard by the Administrative Review Board; the Review Board recommended that the grievance be denied. The reasons given by the Review Board for its decision are:

Based on a total review of available information, the Panel is of the opinion the inmate is guilty of the infraction as cited. Therefore, the Panel is of the opinion the grievance should be denied.

Plaintiff's Exh. 2. Plaintiff contends that in the interim between the Adjustment

Committee meeting and the meeting of the Review Board, he was induced by his attorney to sign the final release and settlement of claim because of the promise that Director Lane would personally view the plaintiff's grievance and come to a decision on it as soon as possible. On December 8, 1984, plaintiff signed the settlement agreement while his grievance was still pending that "personal viewing" by Director Lane. On December 12, 1984, the Review Board met again, personally interviewed the plaintiff, and determined that no further action should be taken, noting that plaintiff had received no response from the first Review Board hearing. Plaintiff's Exh. 3. No specific reasons are given in this report. On December 13, 1984, the Court dismissed plaintiff's cause as settled.

On December 24, 1984, the plaintiff was transferred from segregation at the Joliet Correctional Center to the Pontiac Correctional Center. On January 13, 1985, the plaintiff sent a letter to the Attorney General's Office requesting a modification of the earlier settlement agreement. Defendants' Exh. 20. On January 23, 1985, defendant's attorney directed a letter to defendant Lane requesting that Lane review plaintiff's situation personally. Plaintiff filed the present motion to enforce settlement on March 19, 1985.

## II. DISCUSSION

### A. *Parol Evidence Rule and Oral Agreement Made During Negotiations*

Plaintiff contends that during the weeks prior to the actual signing of the settlement agreement on December 8, 1984, and during the administrative process after his alleged infraction, an oral agreement concerning prompt and personal review by Director Lane was made. Plaintiff argues that since such personal attention was not requested promptly, defendants materially breached the agreement, resulting in plaintiff's inability to enroll in spring semester courses at Roosevelt University.

■ The law on such oral agreements is clear. In a similar case, *G.L. Webster Co.*

*v. Trinidad Bean & Elevator Co.*, 92 F.2d 177 (4th Cir.1937), the role of negotiations and final integration is stated as such: "Where negotiation has been entered into with regard to a transaction and it is understood that the contract finally agreed upon is to be reduced to writing, all of the agreements made between the parties are presumed to be incorporated in the written contract when finally executed by both parties." *G.L. Webster Co., supra*, 92 F.2d at 177.

■ Applying this principle to the case at bar, there is little doubt that the settlement agreement signed by the plaintiff on December 8 was fully integrated and expressed the intent of the respective parties regarding it. The negotiation process had been in progress for over two months. If such a stipulation had been part of the plaintiff's design for the agreement, it could have been negotiated and included in the final writing. The Court further recognizes that even if it were not to consider the writing integrated for some reason, the oral agreement would still be excluded under the Restatement rule that such a stipulation (prompt and personal review by Director Lane) would be of the sort to qualify as a "term which would have been part of the agreement even if it had not been integrated." Restatement 2d, Contracts. The Court finds no merit in the plaintiff's contention that such a "promptness" qualification was made.

### B. *Procedures Following Resident Disciplinary Report of October 29, 1984*

■ Defendants argue that plaintiff was in breach of the settlement agreement by reason of the Disciplinary Report filed on October 29, 1984. As the record shows, plaintiff was the subject of a Resident Disciplinary Report on October 29, 1984, regarding an incident with Officer Doby in which plaintiff allegedly refused to remove his underwear and threatened Officer Doby. On November 1, 1984, the Adjustment Committee met to hear the allegations and found plaintiff guilty of the violations charged. The Committee prepared a

summary of the hearing which appears within. On November 15, 1984, Director Lane approved the Committee's findings and disciplinary actions, with an alteration of the number of good time days to be revoked.

Plaintiff contends that defendants are in breach of the settlement agreement because the November 1, 1984 Adjustment Committee summary is inadequate due to its failure to state either the reasons for the disciplinary action or written justification by the factfinders as to the evidence relied upon to reach the finding of guilt.

Many of the issues presented by this complaint are similar to those raised in the previous opinion of May 14, 1984, in which plaintiff was involved in disciplinary proceedings of a different nature. The major contention in the original case was whether the proceedings utilized to determine plaintiff's guilt satisfied due process under the fourteenth amendment. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), mandates that in a prison disciplinary hearing a prisoner must be provided with "advance written notice of the claimed violation and a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken" in satisfaction of the minimum requirement of procedural due process. *Wolff*, 418 U.S. at 563, 94 S.Ct. at 2978. Furthermore, defendants' own regulations, which they agreed to follow in the event plaintiff violated any rule or regulation (see Defendants' Exh. 1, at ¶ 6), requires the Adjustment Committee to "specifically refer to the evidence which convinced them to decide the committed person did or did not commit the offense." Defendants' Exh. 11A, at p. 7.

Such protection is of paramount importance in a case such as the instant one. Since the state was a party to the original action which resulted in the settlement agreement, it has placed itself in the position of judge and jury by way of its reviewing process. The Court looks with disfavor on any procedural shortcuts the state might take in interpreting the terms of the

settlement agreement and deciding whether plaintiff has breached those terms.

Although the Adjustment Committee report alludes to the reporting officer's statement, the facts contained in that document are not stated in the summary. Furthermore, the reasons for the disciplinary action taken, required by *Wolff* and department regulations, are absent from the summary. Under the "Reasons" portion of the summary, the report states that plaintiff admitted not removing his shorts, but says nothing about the remaining charges and the evidence relied upon to find plaintiff guilty as charged. There is no indication in the record of a logical connection between the punishment invoked and the alleged violations. In fact, the only violation possibly supported by the evidence of this record is plaintiff's violation of DR–403, "Disobeying a Direct Order." The maximum sentence for violation of DR–403, according to department regulations, is 30 days demotion to B or C grade, 15 days loss of good time, 30 days in segregation, and 30 days loss of privileges. Since plaintiff's punishment clearly exceeded these maximums, defendants are in breach of the settlement agreement.

■ Defendants' final argument is patently unreasonable. Defendants suggest that if plaintiff was not afforded procedural due process regarding the October 29, 1984 incident, he should file a new lawsuit and that "termination of work release would be an element of plaintiff's damages." Defendants' Response at ¶ 11. Given, however, that plaintiff's projected release date is presently set for November 14, 1985, requiring plaintiff to file a new suit would simply render moot his request to be allowed to continue his studies. The Court will not condone defendants' apparent strategy of wearing a pro se plaintiff down until his claim becomes moot.

## CONCLUSION

For all of the above reasons, finding that plaintiff will suffer irreparable harm without immediate relief, the Court orders as follows:

(1) Defendants are in breach of the settlement agreement by virtue of their failure to comply with department regulations and minimal standards of due process in processing plaintiff's grievance of the October 29, 1984 Disciplinary Report.

(2) Defendants are ordered to transfer plaintiff to the Metro Chicago Community Correctional Center, or any community correctional center which will enable plaintiff to complete his studies at Roosevelt University in Chicago, within 10 days.

(3) Defendants are ordered to restore plaintiff to Level IV status (see Defendants' Exh. 9, at p. 4) within 10 days.

(4) Defendants are ordered to expunge all records of the October 29, 1984 incident as relating to the unproven charges of violations of DR–504C–102 (assaulting any person); DR–504C–105 (dangerous disturbance); DR–504C–203 (drugs and drug paraphernalia); and DR–504C–206 (intimidation or threat). Furthermore, all collateral consequences of the above charges shall be neutralized. The only violation that shall be permitted to remain in plaintiff's record is his violation of DR–504C–403 (disobeying a direct order).

(5) Defendants are ordered to recalculate defendant's punishment within the applicable limits of DR–504C–403 within 10 days.

(6) Plaintiff's motion for bail is denied as moot.

(7) Defendants' attorney is ordered to promptly communicate the Court's order to plaintiff.

(8) The Court retains jurisdiction to enforce the settlement agreement and this order.

IT IS SO ORDERED.