Larry McCALL–BEY, Plaintiff-Appellee, Cross-Appellant,

*v.*

Gayle FRANZEN, et al., Defendants-Appellants, Cross-Appellant,

Nos. 85–2415, 85–2501.

United States Court of Appeals, Seventh Circuit.

Argued and Decided Sept. 20, 1985.

Opinion Nov. 13, 1985.

Rehearing and Rehearing En Banc Denied Feb. 12, 1986.

Theodore G. Karavidas, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants, cross-appellees.

James A. Geocaris, Jenner & Block, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

The defendants, who are corrections officials of the State of Illinois, appeal under 28 U.S.C. § 1292(a)(1) from a mandatory injunction by the district court, 611 F.Supp. 947. The injunction orders them to admit the plaintiff, an inmate in an Illinois state prison, to a work-release facility, under an agreement settling the plaintiff's federal civil rights suit against them. Because the deadline for the plaintiff to enroll in Roosevelt University, as permitted by the work-release program from which the district court found that he had been improp-

erly expelled, was September 20, the date of the oral argument, and because we had stayed the district court's injunction until then, we decided the appeal by unpublished order (Judge Swygert dissenting) after the oral argument and the conference of the judges, with a notation that an opinion explaining the grounds of our action would follow.

We address two questions. The first is whether the district judge had jurisdiction to adjudicate a dispute arising under the settlement agreement; the second is whether, if so, his resolution of that dispute in the plaintiff's favor can be sustained. The jurisdictional issue is extremely—unnecessarily—difficult; although concluding ultimately that the judge did have jurisdiction, we think that a full examination of the issue may serve to prevent similar issues from arising in the future.

The plaintiff filed his original suit in 1980. The suit was under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, and alleged that in 1977 the defendants had denied the plaintiff due process of law in prison disciplinary proceedings. After the district court granted partial summary judgment for the plaintiff, the parties on December 8, 1984, executed a settlement agreement under which the plaintiff dropped his claim for damages in exchange for the defendants' agreeing to shift him from a state prison outside Chicago to a work-release program in Chicago, where he would be confined at night in a work-release center (a minimum-security prison) and attend college during the day. The agreement required, as a condition of the plaintiff's remaining in the program, that he obey the rules of the work-release center. This is the key provision so far as the substantive issue on appeal is concerned; so far as the jurisdictional issue is concerned the key provision is the following: "Also, the terms of this agreement and any [attorney's] fee agreement will remain confidential and will not be made part of the court file in [docket number]; however, the parties retain their rights to petition the Court regarding any breach or violation of

this agreement." Although the word "retain" suggests that the parties did not intend to confer a right to petition the court to enforce the agreement, but just intended not to waive any preexisting rights they may have had to petition for enforcement, the parties make no issue of this, and we shall therefore assume that the parties did intend that they would have a contractual right to petition the court to enforce the agreement. Of course this does not mean that the court had jurisdiction to do so; it just means that the judge could not have denied the plaintiff's petition to enforce the agreement on the ground that the parties did not intend the agreement to be enforceable in this way.

On December 13, 1984, five days after the settlement agreement had been signed, the district judge dismissed the plaintiff's suit in an order that reads in its entirety, "Order cause dismissed pursuant to stipulation of the parties." The record does not indicate that the judge, when he signed the order, had ever seen either the settlement agreement or the parties' stipulation. The stipulation carries no date of execution, but it was not filed with the district court till December 18, five days after the court had dismissed the suit. · It states that the parties "by and through their respective counsel, ... hereby stipulate pursuant to Rule 41(a) of the Federal Rules of Civil Procedure to dismissal of this cause according to the terms and conditions of the [settlement agreement] entered into by the parties. Said dismissal shall be with prejudice and without costs." The judge was, however, aware that settlement negotiations were in progress, and we may assume was advised when he signed the order dismissing the case that a settlement had been reached, as indeed it had been. The settlement agreement had been signed as we said on December 8, five days before the order was issued and ten days before the stipulation referred to in the order was filed.

When the settlement agreement was signed, the plaintiff was no longer in the work-release program, having been sent to a regular prison the previous month because he had violated the rules of the work-release center. But on February 18, 1985, roughly two months after the suit was dismissed, the plaintiff wrote a letter to the district judge, stating, "I now would like to file a Petition for Writ of Habeas Corpus alleging that I am being detained under an unconstitutional disciplinary action." The judge treated this as a petition to enforce the settlement agreement, ordered the defendants to respond (which they did), concluded that the defendants had indeed violated the settlement agreement by failing to give the plaintiff due process of law in the disciplinary proceeding that had resulted in the revocation of his work release, and ordered the defendants to put the plaintiff back into the work-release program.

The prison disciplinary committee had found that the plaintiff had committed five disciplinary infractions in the course of refusing to take off his undershorts to allow a guard to search for drugs. The judge found that the committee had not explained the grounds for its decision adequately, at least with respect to four of the five infractions charged. The judge said, "the report [of the committee] states that plaintiff admitted not removing his shorts [and thus disobeying a direct order—one of the infractions charged], but says nothing about the remaining charges and the evidence relied upon to find the plaintiff guilty as charged." He added, "the only violation possibly supported by the evidence of this record is plaintiff's violation of DR-403, 'Disobeying a Direct Order.'" Among other things the judge ordered the defendant to expunge from the record any reference to the charges, except disobeying a direct order; the main relief ordered, however, was to transfer the plaintiff back into the work-release program, and that is the only part of the order that the defendants have appealed from.

Regarding jurisdiction to enforce the settlement agreement, the judge said only that the plaintiff had "moved this Court for an order to enforce settlement pursuant to the Court's dismissal of this cause on September 4, 1984 and the Court's retention of

jurisdiction to enter any appropriate order pending completion of the details of the parties' settlement agreement." It is not quite clear how retention of jurisdiction to enter any appropriate order "pending completion of the details of the parties' settlement agreement" would confer jurisdiction to enter orders months after the agreement had been signed, sealed, and delivered. The order of September 4, 1984, had stated in its entirety: "By agreement of the parties, order cause dismissed without prejudice. Court retains jurisdiction for 45 days to enter any appropriate order, as parties are completing details of settlement." On October 5 the judge had issued another order, this one retaining jurisdiction until December 3, and then on November 23 he had restored the case to his active calendar and scheduled a status hearing (never held) for December 14. When he dismissed the case on December 13 he did not say that he was retaining jurisdiction to enforce the settlement agreement.

■ When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings. See, e.g., *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir.1979); *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 142 (5th Cir.1985). No one wants an injunction that cannot be enforced, or that can be enforced only by bringing a fresh suit, which might have to be in a different court; for a change in a party's residence, or other changes, might divest the original court of jurisdiction of the second action—if an independent basis of jurisdiction for that action were necessary. An injunction is supposed to be a swift and effective remedy, summarily enforceable through contempt or other supplementary proceedings in the court that issued the injunction. It would make no difference that the injunction had been issued pursuant to a settlement, as in the *Corrugated Container* case. But no consent decree or other injunction was issued in this case.

When a court grants a voluntary dismissal of a case under Rule 41(a)(2) of the Federal Rules of Civil Procedure, the situation is less clear. A dismissal under this subsection is "upon such terms and conditions as the court deems proper." These might be, one might have thought, terms or conditions calling for subsequent judicial enforcement. It could therefore be argued that jurisdiction was automatically retained to enforce the terms or conditions if and when broken—conditionally retained, but retained nonetheless. And perhaps the conditions could be implicit, so that, for example, if a case were dismissed under Rule 41(a)(2), without prejudice, the parties having represented that the plaintiff had agreed to pay the defendant's attorney's fees, and then the plaintiff reneged, the judge could proceed by way of contempt or otherwise to enforce the implicit term of the dismissal and thus make sure that the defendant got what he bargained for in agreeing to dismissal without prejudice.

■ We state our position in this wishy-washy manner with "could be argued's" and "perhaps's" because the issue of the specific enforceability of terms and conditions imposed under Rule 41(a)(2) is not unavoidably presented, as we shall see; because there is no direct authority on the issue; and because it can be argued with some force that the only consequences of violating a term or condition imposed under Rule 41(a)(2) are either to undo the settlement and restore the case to the court's docket or to change a dismissal without prejudice, the normal consequence of dismissal under Rule 41(a)(2), into a dismissal with prejudice. See, e.g., *De Filippis v. Chrysler Sales Corp.*, 116 F.2d 375 (2d Cir.1940); 9 Wright & Miller, Federal Practice and Procedure § 2366, at p. 183 (1971). Against specific enforceability it can be argued that the reference to terms and conditions in Rule 41(a)(2) is a pretty odd place to bury a grant of federal jurisdiction (especially since Rule 82 provides that "these rules shall not be construed to extend ... the jurisdiction of the United States district courts") and that the remedies of rescinding the settlement or dis-

missing the case with prejudice should be adequate in the general run of cases. The reply is that there may be cases where rescission would not be an adequate remedy, just as rescission is not always an adequate remedy in an ordinary contract case; and cases where dismissal with prejudice would be no remedy at all, because the plaintiff was the wronged party. But the reply assumes—what is most doubtful—that terms or conditions imposed under Rule 41(a)(2) can run in favor of plaintiffs as well as defendants (rescission rather than dismissal with prejudice could only be a plaintiff's remedy). The rule states that dismissal is without prejudice unless otherwise specified, which suggests, and it has been uniformly assumed, that the terms and conditions must be for the defendant's benefit. They are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again. See 9 Wright & Miller, *supra*, § 2366, at p. 177 (1971); *Home Owners' Loan Corp. v. Huffman*, 134 F.2d 314, 317 (8th Cir.1943).

We are therefore not surprised to have found no case where the order of dismissal imposed conditions in the plaintiff's favor (unless, of course, what was being dismissed was a counterclaim, so that the plaintiff was really the defendant). It is because the provision in Rule 41(a)(2) for terms and conditions is intended to be for the defendant's benefit that the standard remedy for a breach of a term or condition of dismissal is to dismiss the case with prejudice, not to restore the case to the court's calendar. The defendant doesn't want the case restored; he wants it dismissed with finality.

■ As this point and the language and history of Rule 41(a) imply, the general purpose of the rule is to preserve the plaintiff's right to take a voluntary nonsuit and start over so long as the defendant is not hurt. Thus the plaintiff can dismiss without the court's permission, and without prejudice to his being able to bring a new suit, if the defendant has not yet answered

the complaint or moved for summary judgment (Rule 41(a)(1)(i)); or with the court's permission, but again without prejudice unless the court specifies that the dismissal is with prejudice, at any later time (Rule 41(a)(2)). See 9 Wright & Miller, *supra*, § 2363, at pp. 151–52; § 2364, at pp. 165–68. When the parties want to dismiss the case with finality because the case has been settled, they usually proceed under a different subsection, Rule 41(a)(1)(ii) (voluntary dismissal by stipulation), where no court order is necessary; and they provide in the stipulation, as the rule authorizes them to do, that the dismissal is with prejudice. This may well have been what the parties intended to do here—though if so their intention was frustrated, as we shall see in a moment. It is not easy to see why the parties would want dismissal with prejudice by court order rather than by stipulation, and so would have to proceed under Rule 41(a)(2). That rule usually comes into play when the parties are unable to agree on the terms of dismissal but the plaintiff wants to dismiss without prejudice, and then the court may want to attach to the dismissal conditions to protect the defendant.

■ Such conditions will, if violated, normally just convert a dismissal without prejudice into a dismissal with prejudice. Neither the language nor history of the rule suggests that it empowers the judge to order specific performance of the parties' undertakings in the settlement agreement. As we have said, Rule 41(a)(2) normally is not invoked when there is a settlement; a dismissal pursuant to settlement normally is made under Rule 41(a)(1)(ii), which is to say without any court action at all. But we need not hold in this case that there can never be a specifically enforceable condition attached to a dismissal under Rule 41(a)(2); there is as we shall see an alternative and slightly more secure basis for jurisdiction.

■ Before exploring that basis we shall note as an aside, but one important for future reference in this and possibly other cases, that although the parties wanted the

dismissal to be with prejudice and so specified in their stipulation to dismiss, the dismissal was without prejudice. Rule 41(a)(2) provides as we have said that dismissal is without prejudice unless otherwise specified, and the judge's order of December 13 dismissing the case did not say it was with prejudice.

One might argue that since the judge's order does not mention Rule 41(a)(2), maybe that wasn't the provision under which he dismissed the case. But it must have been. The only provision in the Federal Rules of Civil Procedure for voluntary dismissal by order of court that could apply here is Rule 41(a)(2). The fact that, as we shall see, the judge may have intended to retain jurisdiction for specific purposes would not change the character of the dismissal as being a dismissal pursuant to Rule 41(a)(2).

It might however be argued that the plaintiff's case had actually been dismissed by stipulation—by a stipulation that recited that dismissal was with prejudice—before the judge issued his order, so that the order was a nullity. Although filed in court after the order of dismissal, the stipulation has no date of execution on it and may for all we know have been executed before December 13. But this would make no difference. Rule 41(a)(1)(ii) requires that the stipulation be filed in court, and the date of filing is the date the dismissal takes effect. Cf. 5 Moore's Federal Practice ¶ 41.02[2], at pp. 41–20 to 41–21 (2d ed. 1985). When the parties filed their stipulation, the judge had already ordered the case dismissed—without prejudice.

■ The requirement that the stipulation be filed in court is not merely a technicality, though treated as one in *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194–95 (5th Cir.1980). It provides a permanent record that facilitates the application of the doctrine of res judicata to subsequent related litigation in those cases where (as here) the stipulation recites that dismissal is with prejudice, and it provides information essential to the management of a judicial docket. If parties did not have to notify the court that they had ended their dispute, the court would have no idea of the size of its backlog without inquiring into the status of every inactive case. We need not consider whether the requirement of filing may be waived in particular cases if necessary to prevent injustice, as none of the parties asks that it be waived here. They treat the judge's order, rather than the stipulation, as the terminating event of the litigation, and the order necessarily was made under Rule 41(a)(2). So the dismissal was without prejudice—though of course one or more of the parties can still request the district court under Rule 60(b) of the Federal Rules of Civil Procedure to correct the judgment to make it with prejudice, as the parties intended that it be. Cf. *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174 (7th Cir.1983).

■ There is a further point, which gets us back on the main track of our analysis. If indeed the case was dismissed under Rule 41(a)(1)(ii), the plaintiff could not later complain to the court that the dismissal had been premised on a settlement agreement that the defendant had violated, and ask the court to order the defendant to abide by the agreement. The court would not have jurisdiction over the dispute merely by virtue of having had jurisdiction over the case that was settled. The violation of the settlement agreement would be a breach of contract remediable under state but not federal law, and therefore only in state court since the parties are not of diverse citizenship. See *Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299, 1303 (4th Cir.1978), and cases cited there. The claim of violation, like a claim in a dispute over the assignment of a federal copyright, would be a good example of a claim that does not arise under federal law within the meaning of 28 U.S.C. § 1331 even though its ultimate origin is federal. See *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (Cardozo, J.); *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) (Friendly, J.); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 183–85 (7th

Cir.1984). "If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral...." *Gully v. First Nat'l Bank, supra,* 299 U.S. at 118, 57 S.Ct. at 100. A dispute over the meaning of an agreement is "collateral" for this purpose when it is not the kind of dispute that is likely to require for its just resolution the special independence, experience, and perspective that federal courts may be thought to bring to the decision of certain cases. A dispute between residents of the same state over the meaning of their contract is not of that kind. Such disputes are traditionally, uncontroversially, and exclusively within the jurisdiction of state courts.

The picture is blurred slightly by a qualification implicit in *Gully,* emphasized in *Harms,* and repeated by us in *Bernstein:* that resolution of the contract dispute not require an interpretation of the federal law from which the contract right descends. Maybe the settlement agreement in this case, in allowing the defendants to expel the plaintiff from the work-release program for disciplinary infractions, should be read to bring in (implicitly) the principles of due process of law to guide the disciplinary proceedings; if so it might seem that the qualification would come into play and there would be federal jurisdiction. But we think not. If two street vendors signed a contract which provided that it could not be terminated except for cause as determined in a hearing conforming to the standards of the due process clause of the Fourteenth Amendment, a breach of the provision could not be sued on in federal court. There would be no federal interest in such a suit. Cf. Currie, *The Federal Courts and the American Law Institute: Part II,* 36 U.Chi.L.Rev. 268, 277 (1969); *Estate of Watson v. Blumenthal,* 586 F.2d 925, 929 (2d Cir.1978).

The parties would be engaged in a transparent attempt to confer federal jurisdiction over local contract disputes by agreement. They cannot do that.

Another interpretation of the plaintiff's petition, but one that also cannot help him, is that it was intended to invoke the district judge's power under Rule 60(b) of the Federal Rules of Civil Procedure to vacate a previous judgment, namely the judgment of dismissal. Any time a district judge enters a judgment, even one dismissing a case by stipulation of the parties, he retains, by virtue of Rule 60(b), jurisdiction to entertain a later motion to vacate the judgment on the grounds specified in the rule, some of which have no time limit. But the power to vacate is not the power to enforce a collateral agreement. If the district judge had treated the plaintiff's letter of February 18, 1985, as a motion to vacate the judgment of dismissal of December 13, 1984, and granted the motion, the effect would have been to restore the plaintiff's original civil rights suit to the trial calendar. The judge could not, on the authority of Rule 60(b), have ordered the defendants to comply with the settlement.

We thus reject the view taken by the Sixth Circuit in *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.1976), that federal courts have an inherent power to enforce settlements of litigation before them, in favor of the contrary view of the Fourth Circuit in *Fairfax Countywide Citizens Ass'n v. County of Fairfax, supra.* Speaking with great respect, we think the Sixth Circuit in *Aro* confused the power of a district judge under Rule 60(b) to restore a previously dismissed case to his docket, which he undoubtedly has, with his power to adjudicate a breach of contract, which he may not have—and certainly does not have by virtue of Rule 60(b). Some breach of contract actions are within federal jurisdiction, but a contract dispute between citizens of the same state that arises under state rather than federal law is not, even though the contract was made in settlement of a federal-question suit. If the

judge sets aside his earlier judgment of dismissal and restores the plaintiff's suit to the trial docket, and then proceeds to adjudicate the issues in that suit, he is adjudicating issues of *federal* law, as he has unquestioned authority to do. If instead he undertakes to adjudicate issues of contract law that he does not have statutory authority to adjudicate, because they are not issues of federal law or state-law issues cognizable under the diversity jurisdiction, he cannot use Rule 60(b) to fill the vacuum.

Although this court recently cited *Aro* with approval, see *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 768 (7th Cir.1985), it did so in a case where it was affirming the dismissal of the enforcement action, and it did not discuss the jurisdictional question, or the Fourth Circuit's answer to it in *Fairfax*. An earlier Sixth Circuit decision on which the court in *Aro* relied, *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir.1973), is not in point; the court had entered a final judgment based on a settlement, and one of the parties challenged the judgment on the ground that he had not agreed to the terms of the settlement. There was no issue of jurisdiction; the issue was the district court's authority to base its judgment on the settlement agreement.

An example will indicate why we doubt the far-reaching power claimed for federal judges by the Sixth Circuit in *Aro* (and only in *Aro* ). Suppose the parties to a diversity suit move for dismissal under Rule 41(a)(2) on the representation that they have settled the suit, but without disclosure to the court of the terms of the settlement. The judge grants the motion, believing that he is definitively, finally, and unconditionally terminating the suit. The settlement agreement requires the defendant to pay for the plaintiff's college education. Ten years later the plaintiff petitions the court to order the defendant to pay him $500, which he alleges is the unpaid balance of his college tuition. Under the view of the Sixth Circuit, even though an original suit based on such an allegation would not be within the jurisdiction of the federal district court because the requirement of 28 U.S.C. § 1332 that the stakes exceed $10,000 could not be satisfied, the court would have jurisdiction of the plaintiff's claim. We cannot believe that this is correct, or understand why the draftsmen of Rule 41(a)(2) would have bothered to mention "terms and conditions" of dismissal if every dismissal were conditional on the defendant's fulfilling whatever promises he made that induced the plaintiff to dismiss. In *Aro* as in this case, the petition to enforce came only a few months after the dismissal; but as the plaintiff's able counsel candidly admitted at argument, the principle for which he is contending has no limit of time. If 20 years from now the plaintiff complains that the defendants have violated a term of the settlement agreement, the judge would, in the plaintiff's view, have jurisdiction to entertain the complaint—and this regardless of whether the district judge intended to retain jurisdiction. No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent. If the parties want the district judge to retain jurisdiction they had better persuade him to do so. Compare *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1190 n. 13 (8th Cir.1984).

In emphasizing that unless jurisdiction is retained the settlement agreement requires an independent basis of federal jurisdiction in order to be enforceable in federal rather than state court, we wish to make clear that we are not suggesting that such agreements are not enforceable. The issue of concern here is whether a settlement agreement is enforceable in federal district court without an independent jurisdictional basis; enforceable, that is, as if the district judge had retained jurisdiction to enforce it, whether or not he did so. As an illustration of the difference between the issue of jurisdiction to enforce a settlement agreement and the issue of the enforceability of such an agreement in a case over which the court has jurisdiction, consider *Lyles v. Commercial Lovelace Motor*

*Freight, Inc.*, 684 F.2d 501 (7th Cir.1982). The parties made an oral agreement to settle their case, and the district court dismissed the case in reliance on it, but with leave to reopen. Later the plaintiff sought to reopen the case because he had decided that he didn't want to settle it. The district court refused, on the ground that the plaintiff was bound by his oral agreement. This court affirmed. There was no question of federal jurisdiction over the plaintiff's suit, which was not a suit to enforce the settlement agreement but a civil rights suit (like the original suit of the plaintiff in this case). This was true whether one viewed the effort to reopen as a motion under Rule 60(b) to vacate the earlier judgment, as a brand-new suit, or as a motion in a pending case (the judge having dismissed with leave to reopen). However it was viewed, it was a dispute arising under the civil rights laws, not under the settlement agreement, which the plaintiff, far from relying on as a source of rights, tried to get set aside as an obstacle to the enforcement of his federal civil rights. It was the defendant who relied on the settlement agreement—as a bar to the suit. There thus was no jurisdictional issue in that case, just as there is no issue of the enforceability of the settlement agreement in this case.

In *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir. 1962), the issue was again whether a party could back out of the settlement agreement that it had made, and this court held that it could not, and upheld a decree based on the agreement. Again there was no question of the court's jurisdiction, since the plaintiff's action (a maritime action) had not been dismissed; the question was the effect of the settlement on that action. It is as if the plaintiff in this case brought a new civil rights suit and the defendants set up in bar of it the settlement agreement which they had made with him. There would be no question of jurisdiction to consider the impact of the agreement on the plaintiff's rights. But what a plaintiff may not do is to obtain enforcement in a federal court of a settlement agreement *after* the litigation in which that agreement was

made has been unconditionally dismissed, unless there is an independent basis of federal jurisdiction over a suit for breach of the agreement.

In *United States v. Orr Construction Co.*, 560 F.2d 765, 768–69 (7th Cir.1977), finally, the settlement agreement was made, interpreted, and enforced all as part of a single litigation over which the district judge unquestionably had jurisdiction, and the challenge to his interpretation was made on appeal from his final judgment in the case, just as in *Kukla.*

■ To summarize, we have expressed profound doubts that Rule 41(a)(2) automatically retains jurisdiction in the district court to enforce the terms of any settlement agreement that may have led the plaintiff to request dismissal of his suit, and we have rejected the suggestion that federal judges have inherent power to enforce settlement agreements arising out of lawsuits that were once before them. But we have expressed no doubt of the power of a district judge to dismiss a lawsuit conditionally, retaining jurisdiction to effectuate terms of settlement agreed to by the parties. Nor do we think there is any magic form of words that the judge must intone in order to make the retention of jurisdiction effective. All that is necessary is that it be possible to infer that he did intend to retain jurisdiction—that he did not dismiss the case outright, thereby relinquishing jurisdiction. Of course the more explicit the district judge is about retaining jurisdiction the less room there is for a dispute, as in this case, over whether he did so. Cf. *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 448–49 (2d Cir.1978).

■ The order of dismissal states that it is pursuant to the parties' stipulation; the stipulation states that the dismissal is pursuant to the terms and conditions in the settlement agreement; and one of those terms is the sentence, quoted earlier, which confers (we are assuming) a right to petition the court to enforce the agreement, and which can certainly be read to request

the district judge to retain jurisdiction of the case for the limited purpose of being able to enforce the agreement. This chain of incorporations supports an argument that the judge explicitly if indirectly retained jurisdiction. The problem is that, so far as appears from the record, neither the stipulation (filed after the judge's order of dismissal) nor the settlement agreement (dated before that order but never filed) was before the judge when he dismissed the case. No responsible judge would agree to conditions of which he had no knowledge; the conditions might be against public policy. One possible inference therefore is that the judge's order of December 13 dismissed the case outright, rather than retaining jurisdiction to enforce whatever terms the parties had agreed to in their settlement agreement.

But this interpretation of the judge's order would be somewhat unrealistic in the circumstances, and we reject it. We know that the judge had been kept apprised of the settlement negotiations over a period of many months; we know that settlements between prisoners and prison officials often contemplate a continuing supervisory role for the federal court; and we know that when the plaintiff wrote his letter to the judge, the judge forthwith characterized it as a petition to enforce the agreement and proceeded to do so. The judge would not have been likely to grant such a petition in a case over which he had no jurisdiction because he had dismissed the case outright months earlier. His response is therefore some evidence that he had indeed intended to make his dismissal, though outright in form, conditional in substance; that in referring to the as yet unfiled stipulation in his order of dismissal, the judge, perhaps fully aware of the tenor and progress of the settlement negotiations and the provision in the settlement agreement for petitioning the court to enforce it, intended to honor that provision, and to this end decided to retain jurisdiction of the litigation for the very purpose of responding to the type of petition that the plaintiff filed. It would of course have been much better if the judge had made all this clear-

er, but we conclude that the plaintiff has shown—if barely—that the judge did retain jurisdiction of the case.

In suggesting that the district judge would have been well advised to disclose his intention to retain jurisdiction more clearly, we do not mean to suggest that to retain jurisdiction to enforce a settlement agreement a judge must make the agreement a part of the record of the case. Such a requirement would discourage settlements, at least settlements the terms of which are judicially unenforceable without the filing of a new suit, because the parties to settlements frequently do not want the terms to be made public. It would be quite enough if the judge, having read the settlement and satisfied himself that specific enforcement of its terms would not be contrary to public policy, issued an order retaining jurisdiction to enforce the settlement. We point out in this connection that Rule 41(a)(1)(ii) (dismissal by stipulation) does not require that the settlement be filed in court, only that the stipulation be filed, and the stipulation need not, and in this case did not, recite the terms of the settlement. But we do not think it is possible for a district judge who has dismissed a suit outright, without even having read the settlement agreement that led the plaintiff to request a voluntary dismissal, and without purporting to retain jurisdiction, later to grant specific enforcement of the settlement. In such a case a petition to enforce commences a new lawsuit which must disclose an independent basis for federal jurisdiction. Yet we have concluded that in the peculiar facts of this case, the judge did intend to retain jurisdiction to enforce the settlement.

To recapitulate our discussion of jurisdiction briefly, we have suggested that Rule 41(a)(2) of the Federal Rules of Civil Procedure does not confer authority on federal district judges to enforce the terms of settlement agreements that may have motivated the parties to seek voluntary dismissal of the suit, and in addition we have held that there is no inherent

federal jurisdiction to enforce agreements to settle federal suits. There must be a deliberate retention of jurisdiction, as by issuing an injunction or stating that jurisdiction is retained for a particular purpose. An unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b). In this case, however, we have found that the district judge did deliberately retain jurisdiction—though for the future we hope judges will make their intentions in this regard much clearer.

We come at last to the merits. Here we can be extremely brief. We may assume with the district judge that in conditioning the plaintiff's participation in the work-release program on his complying with the rules of the work-release center, the parties to the settlement agreement did not mean to give the defendants carte blanche to decide whether the plaintiff had violated those rules. The defendants were constrained by the agreement to observe proper procedures in making any determination that the plaintiff had violated a rule. We may also assume without having to decide that the district judge was correct to find that they failed to do this with regard to four of the five violations. But we think that having found that they properly determined the plaintiff to have violated the rules of the work-release center by disobeying a direct order, the judge was required to conclude that the plaintiff had violated a condition of participation in the work-release program.

Although the judge's order is not so clear as it might have been, we think it unlikely, to say the least, that he would have allowed the disobedience infraction to remain on the plaintiff's record if he had thought that the defendants had failed to observe required procedures in finding that infraction. The evidence of that infraction is far more than is necessary under the standards applicable to judicial review of prison disciplinary proceedings. See *Superintendent, Massachusetts Correctional Institution v. Hill*, —— U.S. ——, 105 S.Ct.

2768, 2774, 86 L.Ed.2d 356 (1985). The truth is that there isn't the slightest doubt that the plaintiff disobeyed a direct order and thereby violated a rule of the work-release center; and once such a conclusion is made, it follows as the night the day that the plaintiff is not entitled to participate in the work-release program. This is not to excuse the defendants' own violations of the settlement agreement, if violations there were; but we do not think it possible to read the settlement agreement to mean that if the plaintiff violated a rule of the work-release center he could not be expelled from the work-release program if the defendants committed procedural errors in processing his alleged violations of still other rules. Otherwise there would be the curious result that the more rules the plaintiff violated, the less likely it would be that he could be expelled from the program, since the more likely it would be that in processing charges of violation the defendants would stub one of their procedural toes. An interpretation of the agreement that encourages such conduct is unreasonable, and must be rejected.

The provision that entitles the defendants to remove the plaintiff from the work-release program if he violates the rules of the work-release center is designed to protect the public safety, since a work-release program allows the convicted criminal to move about with many fewer restraints on his freedom than the ordinary prisoner; permitted this plaintiff for example to attend college in downtown Chicago. A judge may not in construing a consent decree or settlement agreement constraining public officials lightly assume that in settling the lawsuit those officials trifled with the public safety. See *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1013–15, 1020 (7th Cir.1984) (en banc).

So the order to return the plaintiff to the work-release program must be set aside. But this does not conclude the proceeding in the district court, or even our consideration of the appeal. The plaintiff's letter, which the district court treated as a

petition to enforce the settlement agreement, in fact asks for habeas corpus, and although it does not ask for the petitioner's unconditional release from detention it asks for his release from a more to a less restrictive form of detention, and such a request is within the scope of the habeas corpus jurisdiction. *McCollum v. Miller*, 695 F.2d 1044, 1046 (7th Cir.1982). But the district court's order cannot be upheld under the habeas corpus statute, if only because there is no showing that the petitioner exhausted his state remedies. Another possibility is that the petition should be construed as a complaint—not as a complaint alleging a breach of contract actionable under federal law, as (for reasons explained earlier) that theory won't wash, but as a complaint kicking off a brand-new section 1983 suit against the defendants. We have our doubts whether the petitioner's letter can be so construed, even given the policy of construing prisoners' pro se complaints liberally. See, e.g., *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). But in any event the judge did not base his order on a finding of an independent violation of the petitioner's rights but on a finding of a violation of the settlement agreement; nor did he give the defendants the full procedural rights to which they would be entitled if the petition commenced a new suit against them, rather than continuing an old one.

On remand, the district judge will have to decide whether there is any other basis on which the order that we have vacated can be sustained. We hold only that he erred in concluding that the settlement agreement entitled the plaintiff to be returned to the work-release program.

The plaintiff's cross-appeal seeking attorney's fees is dismissed. Having failed, thus far at least, to obtain any of the relief he sought by petitioning the district court, he has no legal entitlement to an award of attorney's fees for time incurred in those efforts. See *Hensley v. Eckerhart*, 461 U.S. 424, 435, 440, 103 S.Ct. 1933, 1940, 1943, 76 L.Ed.2d 40 (1983).

ORDER VACATED; CROSS-APPEAL DISMISSED.

SWYGERT, Senior Circuit Judge, dissenting.

The court today limits the authority of the district courts of this circuit to enforce settlement agreements terminating litigation pending before them. Henceforth, a district court will retain jurisdiction to enforce such agreements only if the court succeeds in evidencing an intention to retain jurisdiction. Concluding that the district court did, "if barely," retain jurisdiction over this case, the court proceeds to reach the merits and reverses the district court's explicit finding that the defendants, and not the plaintiff, violated the settlement agreement. I dissent. Because it is impossible to discern from the majority's opinion exactly what happened a review of the relevant facts follows.

I

Larry McCall-Bey is a prisoner incarcerated at the Pontiac Correctional Facility of the Illinois Department of Corrections ("DOC"). In May 1980 McCall-Bey filed a civil rights action, 42 U.S.C. § 1983, in the United States District Court for the Northern District of Illinois alleging a violation of his right to due process of law.[1] On May 14, 1984 the district court granted McCall-Bey's motion for partial summary judgment holding that the summary prepared by prison administrators setting out their reasons for finding McCall-Bey guilty of the charges filed against him was insufficient under the constitutional standards enunciated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The district court left the issue of damages for trial.[2]

1. The constitutional violation was alleged to have occurred in connection with disciplinary proceedings brought against McCall-Bey in 1977 on charges of deviant sexual assault.

2. The district court's opinion is reported at *McCall-Bey v. Franzen*, 585 F.Supp. 1295 (N.D. Ill.1984).

Following the district court's decision, the parties entered into settlement negotiations. The parties soon reached an agreement and advised the court. On September 4, 1984 the district court dismissed the case, without prejudice, "by agreement of the parties." Pending completion of the details of the settlement the court retained jurisdiction for forty-five days.[3] On October 5, 1984, the court, by separate minute order, retained jurisdiction to December 3, 1984.

On October 29, 1984, while drafting of the final settlement documents continued, McCall-Bey received a Resident Disciplinary Report ("RDR") charging him with violations of the following DOC Disciplinary Rules ("DR"): DR–102, assaulting any person; DR–105, dangerous disturbance; DR–203, drugs and drug paraphernalia; DR–206, intimidation or threat; and DR–403, disobeying a direct order. The district court's description of the events leading up to the charge follows:

During a routine search of plaintiff at the Metro, plaintiff was told to "drop his pants below his knees." Plaintiff was then told to "reach inside the crotch of his shorts and turn it inside out." Plaintiff refused. After being informed that he would be subject to a complete search by Metro officials, the report states that plaintiff "reached inside of his underwear crotch and removed an object covered with paper." Plaintiff then "put the item in the commode and flushed it." While the officer attempted to retrieve the item, the officer states that plaintiff "started wrestling with me to keep me from retrieving the item." Plaintiff then

flushed some cigarette papers down the drain and a "scuffle" ensued between plaintiff and the officer. Plaintiff was then handcuffed.

On November 1, 1984 the prison Adjustment Committee found McCall-Bey guilty of the charges. The Committee's statement of reasons, in its entirety, is as follows: "[Illegible] besides Disciplinary Report. Admission of Resident not taking off his shorts, when ordered by CRC Doby lead the Committee to believe that violation was committed as charged." [4]

On November 23, 1984 McCall-Bey submitted a motion to reinstate the case which was granted the same day. Preparation of settlement documents nevertheless continued and the *General Release and Settlement of Claims* was executed by the parties on December 8, 1984.[5] On December 13, 1984 the district court again dismissed the case "pursuant to stipulation of the parties." The stipulation was not filed until December 18, 1984. The stipulation purported to dismiss the suit "pursuant to Rule 41(a)," "according to the terms and conditions" of the settlement, and "with prejudice."

The settlement provided, *inter alia*, that the plaintiff would be assigned to a work release program in order that he could attend college. In exchange, the plaintiff agreed to obey "all rules and regulations of the work release program, as well as all Illinois Department of Corrections rules." The plaintiff further agreed that if he was disciplined for violating any of the terms or conditions of the agreement or any rule or regulation of the work release program his

**3.** Although settlement documents had not yet been prepared, the DOC assigned plaintiff to the work release program at the Metropolitan Correctional Center on September 12, 1984. Under the auspices of that institution's work release program, plaintiff matriculated at Roosevelt University in the City of Chicago.

**4.** On November 28, 1984 McCall-Bey's grievance was heard by the Administrative Review Board which recommended that it be denied. He was transferred to the state prison at Joliet, Illinois on November 12, 1984. Sometime later he was transferred to Pontiac.

**5.** The majority notes the remarkable fact that plaintiff signed the settlement agreement even though he had already been transferred out of the work release program and was in the midst of disciplinary proceedings. By way of explanation McCall-Bey contends that in the interim between the Adjustment Committee's meeting and the Review Board's meeting he was induced to sign the agreement because of an alleged oral promise that Director Lane would personally review his case.

work release status would be terminated "according to applicable Department of Corrections Rules." The settlement agreement also provided that the parties retained their rights "to petition the Court regarding any breach or violation of this agreement." [6]

On August 1, 1985 the district court denied the defendants' motion to vacate, amend, or stay the judgment. The defendants' emergency motion to stay the order of the district court and to expedite appeal to this court was granted on August 15, 1985. Oral argument was heard on September 20, 1985. On the same day this court issued an order, from which I dissented, vacating the district court's order for reasons to be explained in an opinion to follow. The mandate of this court issued on October 16, 1985.

## II

I turn first to the merits of the plaintiff's case. The majority holds that even though the district court properly exercised jurisdiction over the plaintiff's motion to enforce the settlement agreement it nevertheless erred in ruling that the defendants breached the agreement. The majority holds instead that the plaintiff breached the agreement by violating a prison disciplinary rule. This holding is based on an erroneous reading of the district court's

decision below. The majority contends that the district court found in its order of June 27, 1985, that McCall-Bey had violated DR–403, disobeying a direct order. The district court made no such finding. The district court concluded that the only violation *"possibly supported"* by the record was a violation of DR–403. This qualified statement is not an explicit holding that a violation occurred. The court, however, permitted the violation of DR–403 to remain in McCall-Bey's record and ordered the defendants to recalculate his punishment within DR–403's limits.[7]

It is no easy matter to harmonize the district court's decision to permit the alteration of the plaintiff's record and the recalculation of his punishment with its explicit holding that the defendants breached the settlement agreement. The district court noted that the punishment imposed on McCall-Bey exceeded the maximums for a violation of DR–403 established by DOC regulations, but it is not clear why this fact, standing alone, establishes that the defendants breached the settlement. The defendants' argument nevertheless begs the question.

In executing the settlement agreement, McCall-Bey agreed to abide by all applicable DOC rules and regulations. DOC rules mandate that prisoners in DOC custody obey all orders given by prison corrections

---

**6.** The extent of the district court's knowledge of the terms of the agreement is unclear. The agreement had been executed several days before the order of dismissal. The district court was certainly aware of the fact that settlement negotiations were taking place. It may also have been apprised of the essentials of the emerging agreement. The record is simply unclear. I believe the district court would not have dismissed without some notion of the agreement's basic elements.

**7.** In *Lee v. Hunt,* 631 F.2d 1171, 1173–74 (5th Cir.1980), the Fifth Circuit, after first noting that the district court had properly exercised jurisdiction over a motion to enforce a settlement agreement because federal courts possess the inherent power to enforce such agreements, stated that "the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." Having original jurisdiction over McCall-Bey's federal civil rights action, the district

court enjoyed ancillary jurisdiction over the motion to enforce the agreement terminating that action. *See generally* Wright, *Federal Courts* 28–32 (4th ed. 1983).

The following language from a recent Fourth Circuit decision is instructive:

Settlements and releases assertedly entered into in respect of federal litigation already in progress implicate federal procedural interests distinct from the underlying substantive interests of the parties. Once a claim—whatever its jurisdictional basis—is initiated in the federal courts, we believe that the standards by which that litigation may be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles, independently derived.

*Gamewell Mfg. v. HVAC Supply,* 715 F.2d 112, 115 (4th Cir.1983).

officers. McCall-Bey and the State also agreed, however, that termination of work release status would take place "according to applicable Department of Corrections Rules." The defendants' own regulations, which they agreed to follow in the event plaintiff violated any rule or regulation, required the Adjustment Committee to "specifically refer to the evidence which convinced them to decide the committed person did or did not commit the offense." DOC regulations also provide that *all* evidence submitted "shall be summarized in the written record prepared by the Committee." The district court was clearly correct in finding that the Committee's actual report of the incident totally insufficient when measured against the procedural requirements of the DOC's own regulations.

The Adjustment Committee report refers to the RDR, but the allegations set forth in that document are not discussed. There is no discussion of the charges and the evidence against McCall-Bey except that the report does mention McCall-Bey's "admission" that he did not remove his shorts. The truth is that a reader of the Adjustment Committee report would know next to nothing about the substance of the charges against the prisoner. Even if the Due Process Clause of the Constitution does not require more, the DOC's own regulations certainly demand more of the Adjustment Committee.

The district court cannot decide whether prison disciplinary procedures comport with constitutional, statutory and, in this case, contractual requirements unless the Adjustment Committee report provides "a record for a reviewing court to exercise its minimal review of that record to determine whether the actions of the disciplinary committee were arbitrary, capricious or an abuse of discretion." *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir.1984). An Adjustment Committee report "helps to insure that prison administrators will act fairly" and "serves as the basis for federal court review." 747 F.2d at 1141. These concerns are embodied in the DOC regulations which provide that the Adjustment Committee "shall consider all material which is relevant to the issue of whether or not the committed person committed the offense." Simply put, the Adjustment Committee report in this case evidences no such consideration.

McCall-Bey was thus denied a hearing that comported with the procedural requirements of the DOC. The next issue we must address is whether the district court's finding that the disciplinary procedures utilized below against McCall-Bey were deficient should affect its determination of whether McCall-Bey or the defendants breached the settlement agreement. Even within the confines of a prison, allegations of wrongdoing must be proven in a proceeding that comports with some minimal sense of due process and fairness before they are taken as true.

The majority dismisses this concern. "The truth is that there isn't the slightest doubt that the plaintiff disobeyed a direct order and thereby violated a rule of the work-release center; and once such a conclusion is made, it follows as the night the day that the plaintiff is not entitled to participate in the work-release program." It is astonishing that the majority can assert that there is not the "slightest doubt" of the plaintiff's guilt when there has never been a hearing of his guilt or innocence that satisfied the most minimal notions of due process and, more importantly, the requirements of the DOC itself. The charges against McCall-Bey have not been proved even under the less-than-stringent procedural requirements of the DOC. For purposes of determining who initially breached the agreement, the alleged events of October 29, 1984 simply did not occur, they are non-events. Without a proper adjudication of the charges against McCall-Bey the RDR is merely a series of unproven allegations. Therefore, the district court was clearly correct in ignoring the only "possible" rule violation in determining that the defendants breached the agreement.

The majority also suggests that the procedural errors it concedes occurred in the prison administrative hearing below can be

separated from the assertedly error-free processing of DR–403, disobeying a direct order. We must make this separation, the majority asserts, in order to insure that prison officials do not "stub one of their procedural toes." It is categorically not our task to protect prison officials from the legally significant errors they may commit while operating state prisons. If prison officials find they are stubbing too many of their procedural toes they ought only to charge inmates with those violations the evidence supports. In the present case prison officials should not have charged McCall-Bey with five violations—only one of which had any arguable merit.

In addition the majority's contention that the violation of DR–403 must stand, even though the four other rule violations fall, strains credibility. All five charges arose out of the same incident, all five were made in the same RDR. All five charges were processed together, all five formed the basis of the defendants' disciplinary actions. The entire disciplinary process was invalidated by the Adjustment Committee's violation of DOC regulations.

The district court's opinion is not a model of clarity. Fortunately, our limited task as an appellate court is to determine whether the district court's actions constituted an abuse of discretion. The district court had this case on its docket for more than five years and was intimately familiar with its facts and circumstances. Its precise holding may be somewhat obscure, but it is clear that the district court believed that the defendants, and not the plaintiff, were in breach of the agreement. I am unable to say that the district court's holding that the defendants breached the settlement agreement was an abuse of discretion. To reverse under these circumstances would be to convert this court into a trier of fact. We owe the district court as much deference when it rules for a prisoner as when it rules against. I would affirm the district court's decision that the defendants breached the settlement agreement.[8]

### III

I turn to the jurisdictional issues raised by this case. Judge Posner, writing for the majority, has conceded that the district court "if barely" retained jurisdiction to enforce the settlement agreement. Inexplicably, however, he launches into an analysis obviously designed to support a holding that the court lacked jurisdiction. This is disturbing for several reasons. First, given this court's actual holding, the bulk of his analysis is *dicta*. Second, by employing an analysis calculated to justify a reversal rather than an admonishment of the district judge, this court ensures that the district judges of the circuit as well as the Bar will be confused rather than enlightened. A district judge reading today's decision will not be certain of what is required of him or her in the future because the majority opinion criticizes the conduct of the district judge while simultaneously permitting it. The majority gives back with the left hand what it has taken away with the right. Finally, the majority's jurisdictional analysis with its grudging concession places me in the awkward position of having to decide whether to retain or discard my own jurisdictional analysis. Despite the concession, I have chosen to discuss the jurisdictional issue in order to clarify the settled authority of district courts to enforce settlement agreement.

### IV

Settlement agreements are highly favored and will be enforced whenever possible. *Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Metropolitan Housing Development v. Village of Arlington Heights,* 616 F.2d 1006, 1013 (7th Cir.1980); *Pearson v. Ecological Science,* 522 F.2d 171, 176 (5th Cir.1975), *cert. denied sub nom. Skydell v. Ecological Science,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); *Kohr v. Allegheny Airlines,* 504

---

**8.** Because I would affirm the district court's decision that defendants breached the settle-ment agreement, I do not reach McCall-Bey's due process claims.

F.2d 400, 405 (7th Cir.1974).[9] There is no requirement that settlement agreements be in writing. *Kukla v. National Distillers Products,* 483 F.2d 619, 621 (6th Cir.1973). Federal courts have consistently approved the enforcement of oral settlement agreements. *Cooper-Jarrett v. Central Transport,* 726 F.2d 93, 96 (3d Cir.1984); *Odomes v. Nucare,* 653 F.2d 246, 252 (6th Cir.1981); *Wiltgen v. Hartford Accident & Indemnity,* 634 F.2d 398, 400 (8th Cir. 1980); *Harrop v. Western Airlines,* 550 F.2d 1143, 1145 (9th Cir.1977); *Warner v. Rossignol,* 513 F.2d 678, 682 (1st Cir.1975); *Massachusetts Casualty v. Forman,* 469 F.2d 259, 260 (5th Cir.1972); *Autera v. Robinson,* 419 F.2d 1197, 1198 (D.C.Cir. 1969). By their very nature oral arguments cannot be incorporated, except by reference, into an order of a court, nor can oral arguments be read, in the conventional sense, by a court. The basis for the enforcement of these agreements is the inherent authority of district courts to enforce agreements terminating litigation pending before them. Today's decision suggests that such agreements are an inadequate basis for federal jurisdiction and rejects the inherent authority of district courts to specifically enforce them.

In *Lyles v. Commercial Lovelace Motor Freight,* 684 F.2d 501 (7th Cir.1982) (Eschbach, J.), the plaintiff had orally agreed to settle his claim against the defendant four days before the scheduled trial date. The district court was informed of the parties' intention to settle the lawsuit two days later. The defendant submitted written settlement documents to the plaintiff, but not to the court. These documents were never executed. "[N]o further communication was received by the court from any of the litigants." 684 F.2d at 503. Nearly eight months later, on the basis of this information, the district court dismissed the case without prejudice to the right of either party to reopen the action within thirty days if the settlement was not consummated. More than thirty days after the district court's dismissal order, the plaintiff moved to reopen the case stating that the settlement agreement tendered by the defendant was unacceptable. The district court ruled that the parties were bound by the oral settlement agreement and refused to reopen the case holding that the nine-month delay between the time of the settlement and the motion to reopen had prejudiced the defendant.[10]

This court affirmed the district court's finding that the parties were bound by the settlement agreement. "An oral agreement to settle the claims asserted by [the defendant] is enforceable under federal law." 684 F.2d at 504. At no time was a written settlement agreement presented to the district court for none was ever executed by the plaintiff. There is no indication that the district court was even aware of the terms of the agreement. The court dismissed on the basis of the parties' mere intention to settle. The agreement at issue in the instant case, though never submitted to the district court, was properly executed in *written* form. The parties do not contest the validity of the agreement, nor do they disagree over the meaning of the agreement's basic terms.

In *Cummins Diesel Michigan v. Falcon,* 305 F.2d 721, 723 (7th Cir.1962), the parties orally agreed at a pretrial conference held before the district court to settle their dispute. Three weeks later the court was informed that one of the parties had repudiated the settlement agreement. The court entered summary judgment in accordance with the agreement. The court stated that "... a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the court."

*"Bunch" Hullet v. Universal C.I.T. Credit,* 259 F.2d 685, 688 (10th Cir.1958).

---

**9.** In some circumstances it may be beyond the district court's discretion to refuse to enforce a valid settlement agreement. *In re Air Crash Disaster,* 687 F.2d 626, 629 (2d Cir.1982); *Kohr,* 504 F.2d at 405; *Meetings and Expositions v. Tandy,* 490 F.2d 714, 717 (2d Cir.1974); *E.L.*

**10.** Several of the defendant's potential witnesses had become unavailable.

In *United States v. Orr Construction,* 560 F.2d 765, 768–69 (7th Cir.1977), this court held that district courts retain jurisdiction to enforce settlement agreement when they enjoy original jurisdiction over the underlying cause of action. There is no indication that the agreement in *Orr* was submitted to the district court. Indeed, the facts of that case suggest the contrary.[11]

In *Debose v. Mueller,* 552 F.Supp. 307, 308 (N.D.Ill.1982), the parties reached an oral settlement agreement in the presence of the court. The case was dismissed pursuant to the agreement. The defendant refused to honor the agreement and the plaintiffs moved to enforce the settlement. The court granted the motion. Until today, the inherent authority of district courts to enforce settlement agreements had never been seriously questioned in this circuit.

The majority attempts to distinguish *Lyles* by asserting that in that case "there was no question of federal jurisdiction" "just as there is no issue of enforceability of the settlement agreement in this case." The court in *Lyles,* however, held that the agreement at issue was enforceable under *federal* law. The majority implies that the critical distinction between *Lyles* and the present case is that in *Lyles* the motion before the district court was a motion to reopen the case, whereas here, the motion at issue is a motion to enforce the settlement agreement. I suggest that the majority has missed the point entirely.

In *Lyles* the moving party was the plaintiff. Because the plaintiff sought to repudiate the agreement he moved to reopen the case. This sequence of events, however, is merely fortuitous. Under the majority's analysis, if the defendant in *Lyles* had filed a motion to enforce the settlement before the plaintiff had filed his motion to reopen, the district court's jurisdiction would have been problematic.

I can thus only assume that had the district court construed McCall-Bey's letter of February 18, 1985 as a motion to reopen the case rather than as a motion to enforce the settlement, the court's retention of jurisdiction would not have troubled this court. There is, of course, no fundamental difference between reopening a case because a contract has been broken, and enforcing the contract. In both cases the contract dispute is a direct consequence of the amicable resolution of a dispute properly before the district court. In both cases the resolution of the contract dispute is "logically dependent" on the underlying federal claim. *See Owen Equipment & Erection v. Kroger.* 437 U.S. 365, 376, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

This circuit does not stand alone in rejecting the position advanced by the majority today. In *Green v. Lewis,* 436 F.2d 389, 390 (3d Cir.1970), the parties orally agreed to settle the pending claim. The parties announced their agreement to the court. It approved the settlement. The plaintiff later rescinded the agreement and moved to reopen the proceedings. The district court entered judgment for the defendant in accordance with the terms of the settlement agreement. The court of appeals affirmed stating that: "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing." *See also Good v. Pennsylvania RR,* 384 F.2d 989, 990 (3d Cir.1967); *Main Line Theatres v. Paramount Film Distributors,* 298 F.2d 801, 802 n. 1 (2d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962).

In *Fulgence v. McDermott,* 662 F.2d 1207, 1209 (5th Cir.1981), the parties had orally settled their dispute. Upon reading the written settlement documents prepared after the oral agreement the plaintiff refused to execute the agreement. The district court granted the defendant's motion to enforce the settlement agreement. The

---

**11.** Prior court approval of settlements is required only in bankruptcies, class actions, and shareholder derivative suits. *United States v. Miami,* 614 F.2d 1322, 1330 (5th Cir.1980). *Cf.*

*Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir.1982) (consent decrees binding even without judicial approval).

court of appeals affirmed holding that oral agreements to settle are enforceable against plaintiffs who "knowingly and voluntarily" agree to the terms of the settlement. *See also Mid-South Towing v. Har-Win,* 733 F.2d 386, 390 (5th Cir.1984); *Glazer v. Bradford,* 616 F.2d 167, 169 (5th Cir.1980).

Today's decision calls into question the well-established practice of federal trial courts as well. District courts have long assumed that they have the inherent authority to enforce settlement agreements. *See Allen v. Alabama State Board,* 612 F.Supp. 1046 (M.D.Ala.1985); *Echols v. Nimmo,* 586 F.Supp. 467, 469 (W.D.Mich. 1984); *Bergstrom v. Sears, Roebuck & Co.,* 532 F.Supp. 923, 932 (D.Minn.1982); *Morris v. Gaspero,* 522 F.Supp. 121, 124 (E.D.Pa. 1981); *United States for Use of Harter Concrete Products v. Buckner & Moore,* 505 F.Supp. 409, 410 (W.D.Okla.1979); *Dependahl v. Falstaff Brewing,* 448 F.Supp. 813, 815 (E.D.Mo.1978); *Gliniecki v. Borden,* 444 F.Supp. 619, 622 (E.D.Wisc.1978); *Read v. Baker,* 438 F.Supp. 737, 741 (D.Del.1977), *aff'd,* 577 F.2d 728 (3d Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 197, 58 L.Ed.2d 180 (1978); *Reid v. Graybeal,* 437 F.Supp. 24, 27 (W.D.Okla.1977).[12]

In *Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299 (4th Cir.1978), the plaintiffs sought to reopen their case more than three years after the order of dismissal. In the instant case the motion to enforce the settlement agreement was filed less than three months after the order of dismissal. Moreover, in *Fairfax* the parties' stipulation of dismissal did not refer at all to the settlement.

More importantly, *Fairfax* is an isolated case. No other circuit has adopted the Fourth Circuit's approach to this issue. In *In re Corrugated Container Antitrust Litigation,* 752 F.2d 137, 142 (5th Cir.1985),

for example, the Fifth Circuit observed that the *Fairfax* decision "may be contrary to the Fifth Circuit opinions concerning the inherent power of a district court to enforce an agreement settling litigation pending before the court." Indeed, the status of the *Fairfax* case even within the Fourth Circuit is questionable. In *United States v. Newport News Shipbuilding & Drydock,* 571 F.2d 1283, 1286 (4th Cir.), *cert. denied,* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978), a case decided one week prior to *Fairfax,* the court stated that parties to contractual negotiations may enter into an enforceable oral contract to settle where the parties intend that their agreement should *later* be reduced to writing. The circuit has continued to cite the general principle of *Aro* approvingly. *Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir. 1983); *Millner v. Norfolk & Western RR,* 643 F.2d 1005, 1009 (4th Cir.1981).

Even if *Fairfax* were controlling, the district court here successfully retained jurisdiction by indirectly incorporating the settlement agreement into the order of dismissal. The dismissal order was issued pursuant to stipulation; the stipulation was executed pursuant to the settlement. This chain of incorporation, as the majority concedes, satisfies the procedural requirements of *Fairfax.*

The majority has given us an extensive discussion of the applicability of Rule 41 of the Federal Rules of Civil Procedure to this case. This issue was not raised below, and not briefed or argued to this court. The parties' stipulation of dismissal does state that dismissal is to be made pursuant to Rule 41, but neither the September 4, 1984 dismissal order nor the December 13, 1984 dismissal order mentions the rule. The majority states that dismissal must have been made pursuant to Rule 41 because it is the only provision in the Federal Rules of

---

**12.** Some district courts have asserted that a settlement agreement is enforceable only if physically incorporated into an order of dismissal. *Musifilm v. Spector,* 568 F.Supp. 578, 581 (S.D. N.Y.1983); *Backers v. Bit-She,* 549 F.Supp. 388, 389 (N.D.Ca.1982); *Denali Seafoods v. Western Pioneer,* 92 F.R.D. 763, 764 (W.D.Wash.1981).

*But compare Pedersen v. M/V Ocean Leader,* 578 F.Supp. 1534 (W.D.Wash.1984); *Fustok v. Conticommodity Services,* 577 F.Supp. 852, 858 (S.D. N.Y.1984); *Sidewinder Marine v. Nescher,* 440 F.Supp. 680 (N.D.Ca.1976). The caselaw makes no distinction between prejudgment and postjudgment motions for enforcement.

Civil Procedure for voluntary dismissal by order of the court. The majority thus seems to suggest that a district court may not dismiss litigation pending before it unless explicitly authorized by the federal rules. The Federal Rules of Civil Procedure were not intended to exhaust the authority of the district courts of the United States. Courts retain the power to dismiss apart from legislative fiat. The rules clarify and define the power of federal courts in certain specific, enumerated situations. They were not intended to supplant the existing authority of Article III courts.

In support of its position the majority cites Rule 82 for the proposition that the rules are not to be construed as extending the jurisdiction of the district courts. In fact, Rule 82 provides that the rules "shall not be construed to extend *or limit* the jurisdiction of the United States district courts" (emphasis added). A fair reading of Rule 82 is that it is intended to preserve the pre-existing jurisdiction of the district court. Prior to the adoption of the Federal Rules of Civil Procedure, district courts, of course, regularly dismissed suits pending before them.

In any event I agree with the Fifth Circuit in *Oswalt v. Scripto*, 616 F.2d 191, 195 (5th Cir.1980), that Rule 41 is satisfied even if no formal, written stipulation of dismissal is entered into the record: "To require the filing of a formal document would countenance a mechanistic view of the Federal Rules of Civil Procedure and exalt form over substance." In the present case, the district court dismissed the case five days before the actual filing of the stipulation of dismissal. The majority implies, without so holding, that this action in and of itself was somehow improper under Rule 41. This truly is the exaltation of form over substance.

District courts are entitled to rely on the representations of counsel that a stipulation of dismissal will soon be filed. They need not delay their disposition of cases pending before them until physically presented with a written stipulation comporting with the requirements of Rule 41.[13]

The majority illustrates the consequences it fears may result if we were to hold that the district court had the inherent authority to enforce the settlement agreement with a hypothetical. In the majority's hypothetical a defendant is forced into federal court on an action to recover a $500 unpaid tuition balance on a college education he agreed to provide as part of a ten-year-old settlement agreement. The majority's hypothetical is not this case. Moreover, nothing compels district courts to enforce absurd or grossly inequitable agreements. Trial judges rarely exercise jurisdiction in cases that are inappropriate for federal jurisdiction. Should an errant district court exercise jurisdiction in a particularly inappropriate situation, this court, as always, retains the power to reverse its actions under an abuse of discretion standard. Under the majority's rationale, the plaintiff in its hypothetical need only persuade the district court to attach a copy of the settlement agreement to its dismissal order in order to cause the district court to evidence an intention to retain jurisdiction.[14]

V

There has been much concern expressed in recent years over the "crisis" in the federal court system caused by the apparent "explosion" in federal litigation. This court has been at the forefront of efforts to alleviate the "burden" on the federal courts. Today's decision, while effectively removing this case from the appellate dock-

---

**13.** The minute order forms employed by the judges of the Northern District of Illinois provide for dismissal pursuant to Rules 4, 21, 41, and "by agreement."

**14.** This would be a different case if the language of the settlement agreement was so indefinite that what constituted compliance could not be

ascertained. *See Orr*, 560 F.2d at 769; *United Mine Workers v. Consolidation Coal*, 666 F.2d 806, 810 (3d Cir.1981). In such a case, while jurisdiction over a motion to enforce the settlement agreement would properly lie with the district court, the court, in the sound exercise of its discretion, should decline enforcement.

et, may in the long run increase the work-load of the district courts.

It will now be more difficult for litigants to avail themselves of a proven means of avoiding "the expense and delay incidental to litigation." *Autera,* 419 F.2d at 1199. The ability of district courts to enforce settlement agreements is often a crucial factor in litigants' decisions to settle and dismiss pending lawsuits. No longer, however, will trial courts be able to dismiss cases the moment they are informed that the parties have agreed to settle. District courts must now make certain they take steps to evidence an intention to retain jurisdiction before dismissing. Henceforth, district courts may insist that the parties first prepare a written settlement document. Conceivably, courts may decide to hold a hearing to determine whether its understanding of the proposed agreement corresponds to that of the parties.

Experience has shown that it may be months before an agreement in principle to settle is translated into an executed settlement document. Because an agreement not incorporated into a dismissal order may not be enforceable, the period between agreement in principle and final execution will tend to decrease the chances of amicable settlement of disputes.

In addition, there are many instances in which litigants desire that the terms of settlement agreements not be disclosed. The agreement in this case, for example, contains a non-disclosure provision. By requiring the district court to clearly indicate its intention to retain jurisdiction over settlement agreements, today's decision creates an incentive to make all such agreements part of the public record and frustrates litigants' desire for confidentiality.

## VI

One of the stated goals of the criminal justice system is to rehabilitate offenders and facilitate their integration into the mainstream of our society. The Administrative Regulations of the Illinois Department of Corrections, for example, declare that the "goals and purposes" of the regulations "involve programming residents to

their greatest potential of self-development." McCall-Bey, nearing the end of his sentence, has evidenced a desire to educate and improve himself. McCall-Bey waived a claim for damages against the State and asked only that he be permitted to attend school. Today, this court slams the door in his face.

I would affirm the district court.