**Peggy BRADY for Kenneth Brady, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D.,\* Secretary of the Department of Health and Human Services, Defendant–Appellee.**

No. 88–3354.

United States Court of Appeals, Seventh Circuit.

Argued May 25, 1989.

Decided Sept. 29, 1989.\*\*

---

\* Pursuant to Fed.R.App.P. 43(c)(1), we have substituted the original appellee's successor to this proceeding.

\*\* This appeal was originally decided by unpublished order on September 29, 1989. *See* Seventh Circuit Rule 53. The court has subsequently decided to issue the decision as an opinion.

John Bowman, Shelley Davis, Joseph Antolin, Antoinette Moore, Thomas Yates (argued), Karyn Glass, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff-appellant.

Terry M. Kinney, Eileen M. Marutzky, Asst. U.S. Attys., Chicago, Ill., John M. Sacchetti (argued), Stanley Ericsson, Dept. of Health and Human Services, Baltimore, Md., for defendant-appellee.

Before WOOD, Jr., COFFEY and FLAUM, Circuit Judges.

PER CURIAM.

After a long procedural history, this appeal arises from the dismissal, on the basis of jurisdiction, of Kenneth Brady's claim for surviving child benefits under Title II of the Social Security Act.[1] We affirm.

## I. FACTUAL BACKGROUND

On June 16, 1969, Kenneth Brady ("Brady"), through Peggy Brady, applied for child's social security benefits on the earnings of his deceased putative father, John Brady.[2] Brady claims to be John's illegitimate son, born of an affair between John and Betty Dixon, their babysitter. John's wife Peggy claimed to have discovered the affair when she returned home early one night in 1966. Although Peggy was distraught when she first learned of the affair, she and John later agreed, it is claimed, to adopt the child claimed to have been born of that affair. John Brady died on September 21, 1966; Kenneth was born on October 21, 1966.

Soon after Kenneth's birth, Peggy Brady claims to have retained attorney Joseph Meid to arrange for his adoption, paying Meid $1,000 in exchange for his agreement to coordinate the delivery of the baby to Peggy. The baby's transfer did not take place through customary means, however. Meid apparently obtained baby Kenneth from his mother (whom Meid claims was Betty Dixon) and personally handed him over to Peggy Brady in a restaurant parking lot. Although Meid agreed to obtain the baby's birth certificate and to process the adoption papers, he never did so and Peggy Brady never saw him again.

The Social Security Administration denied Brady's claim on May 10, 1974, on the basis that his relationship to the wage earner had not been established. Brady requested reconsideration, submitting affidavits from Peggy Brady attesting to Kenneth's parentage and from the chaplain who had counseled Peggy Brady at the time she learned of her husband's affair with Dixon. After a hearing, an Administrative Law Judge (ALJ) denied Brady's claim. The ALJ determined that no reliable evidence existed to substantiate Kenneth's paternity claim. The Appeals Council upheld the decision on September 7, 1976.

Brady filed a second application in April 1979; this application and his subsequent request for reconsideration were denied as duplicative of the first. Brady then submitted new evidence to support his right to benefits as John's natural child consisting of an affidavit from Joseph Meid, the attorney who purportedly arranged for the baby's transfer from Dixon to Peggy Brady. Brady also attached a copy of an Order of Intestacy and Determination of Heirs entered by the Maricopa County, Arizona Superior Court (entitling him to inherit intestate personal property from John Brady) and a copy of an adoption certificate for Kenneth obtained by Peggy Brady on December 3, 1979. The ALJ held that the new evidence was not material and again dismissed the claim. The Appeals Council affirmed the denial in October 1980. Brady petitioned for court review but the action was dismissed for want of jurisdiction.

---

1. We refer to Kenneth Brady as the claimant even though his mother filed for benefits on his behalf.

2. In an earlier application, Peggy Brady had filed for surviving child benefits on behalf of three other children: John C. Brady, Nora Brady, and Judith Brady.

In the meantime, a class action suit was brought in the United States District Court for the Northern District of Illinois on behalf of illegitimate children who had been denied surviving child benefits. The suit, *Boatman v. Schweiker*, No. 78 C 299 (unpublished order) (*"Boatman I"*), alleged that the Secretary improperly applied its regulations against the class members.[3] The parties settled the suit in October 1981 and submitted an agreement to the court ("the *Boatman* Agreement"); the court's entry states that the case was dismissed under Fed.R.Civ.P. 41(a).

In the *Boatman* Agreement, the Secretary agreed to treat any applicant who qualified as a "child" under section 416(h)(2)(A) as "dependent" for purposes of the Act, thus entitling them to collect benefits. The Secretary agreed to contact those individuals who had been denied benefits on the record earnings of their putative parents.

In July 1982, in accordance with the *Boatman* Agreement, the Secretary reopened Brady's request for benefits. The Secretary examined Brady's application to determine whether he had demonstrated actual dependency or whether, under 42 U.S.C. § 416(h)(2)(A), state law established his right to inherit intestate personal property from John Brady. Finding nothing improper in its previous determination, the Secretary again denied Brady's claim.

Brady appealed to the ALJ. At the ensuing hearing, Peggy Brady testified about Kenneth's origins and presented photographs which she felt revealed the resemblance between Kenneth and John Brady. Documentary evidence was submitted, including Kenneth's baptismal certificate, the Arizona court order, the adoption decree of Kenneth Brady by Peggy Brady, Meid's

affidavit, and a copy of a death certificate for a Betty Guthrie (allegedly Betty Dixon) who died on April 11, 1977.

The ALJ concluded that Brady could not be considered a child of John Brady within the meaning of 42 U.S.C. § 416(h)(3) because there was no evidence that Betty Dixon had been dependent upon John Brady at the time of his death. To determine whether he qualified under 42 U.S.C. § 416(h)(2)(A),[4] the ALJ applied the law of Arizona, where John Brady was domiciled at the time of his death. The ALJ stated that the Arizona court decree could not be considered conclusive unless four conditions were satisfied:

1) an issue in a claim for social security benefits previously had been determined by a State court of competent jurisdiction; 2) this issue was genuinely contested before the State court by parties with opposing interests; 3) the issue falls within the general category of domestic relations law; and 4) the resolution of [the] State trial court is consistent with the law enunciated by the highest court in the State.

The ALJ concluded that the Arizona court document did not provide clear and convincing evidence that Kenneth Brady was John Brady's heir at law. The ALJ also found no evidence that John Brady was the claimant's biological father. The ALJ denied Brady's claim on January 31, 1983. The Appeals Council upheld the denial of benefits on April 28, 1983.

On June 14, 1983, Brady filed a petition for review in the United States District Court for the Northern District of Texas, Amarillo Division ("Texas district court"), the judicial district where he then resided. Brady alleged that the Secretary improperly denied him benefits. He took issue with

---

**3.** In brief, the plaintiffs alleged that (1) the Secretary improperly required illegitimate child applicants who qualified as a "child" of the wage earner under section 416(h)(2)(A) to prove dependency as well and (2) the Secretary misapplied state law to the section 416(h)(2)(A) determination.

**4.** The statute provides as follows:

In determining whether an applicant is the child or parent of a fully or currently insured

individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or if such insured is dead, by the courts of the State in which he was domiciled at the time of his death....

42 U.S.C. § 416(h)(2)(A).

the four-step analysis applied to the Arizona court order that designated him as John Brady's heir. Brady charged that the Secretary should have accepted the Arizona order as adequate proof of his "child" status under section 416(h)(2)(A), and that the treatment of his claim violated the terms of the *Boatman* Agreement.

In addition to seeking review of his individual claim, Brady requested relief on behalf of other illegitimate child applicants who had been denied benefits by the Secretary, despite eligibility to inherit intestate property from the wage earner under state law. Brady filed an amended petition, adding class action allegations that charged the Secretary with violating the *Boatman* Agreement. On September 12, 1983, Brady moved for class certification.

Since Brady's petition alleged violations of the *Boatman* Agreement, the Texas district court concluded that venue for the suit belonged in the Northern District of Illinois. Without ruling on the class certification issue, the Texas district court *sua sponte* dismissed the action without prejudice. Brady did not appeal.

Instead, Brady filed a motion for reconsideration, pointing out that the 60–day statute of limitations provision of 42 U.S.C. § 405(g) would prevent a new filing in Illinois. He asked the court to reinstate his suit and transfer it pursuant to 28 U.S.C. § 1406. Over the Secretary's objection, the Texas district court agreed to do so. The court vacated its order of dismissal and, on June 7, 1985, transferred the case to the United States District Court for the Northern District of Illinois, Eastern Division; the transferred case was assigned to Judge Williams.

On November 26, 1985, Brady and six unnamed members of the *Boatman* class filed a separate petition to show cause why the Secretary should not be held in contempt for violating the terms of the agreement (*"Boatman II"*). After an initial grant of the petition to show cause, Judge Williams determined that the Secretary could not be held in contempt because the *Boatman* Agreement was not a court order which would bind the Secretary. Rather, the court construed it as a stipulated agreement entered pursuant to Fed.R. Civ.P. 41(a)(1)(ii). Accordingly, the *Boatman I* district court had retained no jurisdiction to ensure its enforcement. Judge Williams ordered that *Boatman II* (the contempt proceeding) be dismissed.

Brady then attempted to resurrect the petition transferred from the Texas district court. On June 22, 1987, Brady moved for leave to file a second amended petition and to join additional party plaintiffs. Brady's proposed complaint, (*"Brady"*), alleged that the Secretary improperly applied 42 U.S.C. § 416(h)(2)(A) to his personal claim for benefits and that the *Boatman* Agreement had been violated on a class-wide basis. On September 28, 1987, Brady renewed his request for class certification. On March 2, 1988, the Secretary moved to dismiss, alleging that the district court lacked venue and jurisdiction in *Brady* and that the plaintiff could not renew his *Boatman* complaints by filing a separate action.

On September 6, 1988, Judge Williams reversed her previous conclusion that the *Boatman* Agreement was a stipulated order entered pursuant to Fed.R.Civ.P. 41(a)(1)(ii). Citing *McCall–Bey v. Franzen*, 777 F.2d 1178 (7th Cir.1985), Judge Williams concluded that the suit had been dismissed under Fed.R.Civ.P. 41(a)(2), and that the *Boatman* Agreement set forth the conditions upon which the court agreed to grant the motion to dismiss.

Judge Williams also held that the *Boatman I* court had intended to retain jurisdiction. She noted that the *Boatman I* judge had presided over numerous settlement conferences. Moreover, Fed.R.Civ.P. 23(e) mandates court approval of class action settlement agreements. Finally, the *Boatman* Agreement required the Secretary to file, within nine months of the order's entry, documents evidencing compliance with its terms. The court hinted that an aggrieved class member could seek enforcement of the *Boatman* Agreement under *Boatman*. For this reason, there was no jurisdiction to consider the claims raised in *Brady*. Judge Williams ordered the case

dismissed and denied Brady's motion for reconsideration. This appeal followed.

## II. ANALYSIS

On appeal, Brady asks this court to review the administrative denial of his claim for surviving child benefits. The Secretary stresses that this is the first time the appellant has pressed the merits of his individual application without raising class allegations. For this reason, the Secretary urges that we should not consider whether Brady's Arizona court decree satisfies the requirements of 42 U.S.C. § 416(h)(2)(A) and 42 U.S.C. § 402(d)(3).[5] We agree.

■ Aggrieved by the Secretary's decision and believing that the Secretary had violated the terms of the *Boatman* Agreement, Brady had two means of obtaining judicial review. As a class member of *Boatman*, Brady could have sought enforcement of the Agreement in the Illinois district court. *Cf. Jackson v. Alabama Dept. of Public Safety*, 657 F.2d 689, 690 (5th Cir.1981) (per curiam) (holding that when a plaintiff's claim is founded on the defendant's noncompliance with a class action consent decree, he must seek enforcement of the decree in the class action court), *cert. denied*, 455 U.S. 956 (1982); *see also Goff v. Menke*, 672 F.2d 702 (8th Cir.1982). Alternatively, and because the *Boatman* Agreement did not purport to limit a claimant's right to individual review, Brady could have requested judicial review

of the Secretary's adverse determination of his claim in accordance with 42 U.S.C. § 405(g).[6]

Brady chose, however, to follow a third and unauthorized course of action. Although he filed for review of his individual claim under section 405(g), Brady did not confine his pleadings to the merits of his own application. Rather, he advanced claims on behalf of similarly situated *Boatman* members, thus trying to formulate a new class action.[7] It was for this reason that the Texas court determined that the *Boatman* forum must adjudicate his claim and dismissed his case without prejudice.

Brady was free to appeal this decision.[8] Brady elected not to do so, but requested that the Texas district court transfer his suit to the Northern District of Illinois. He thus confirmed that the merits of his own case were so closely intertwined with *Boatman* that they must be considered by the *Boatman* forum.

We also find it significant that Brady's application for benefits was reopened pursuant to the *Boatman* Agreement and that Brady identified himself as a *Boatman* class member. Indeed, while he vigorously joined in the petition seeking a contempt order against the Secretary for violating the *Boatman* Agreement, his own case lay dormant for nearly two years.

It is therefore clear that Brady has chosen to pursue enforcement of the *Boatman*

---

5. The Secretary also contends that the Illinois district court lacks jurisdiction to consider Brady's individual claim for benefits. The Secretary maintains that the venue provision of section 405(g) is a conditional waiver of sovereign immunity, and that, contrary to the plaintiff's assertion, venue has never been waived in this case. Because we believe that Brady has not adequately preserved the merits of his individual claim, we need not address this issue.

6. The Agreement stated in pertinent part: "The certification of this class [the *Boatman* class] will not limit the appeal rights of individual class members ... if those rights are asserted in a timely manner on behalf of that individual and no others."

7. In *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979) the Supreme Court cautioned that when a federal

court is to certify a class under section 405(g), the court should "take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts."

8. There are circumstances in which the dismissal of a case without prejudice is not considered a final decision of the district court within the meaning of 28 U.S.C. § 1291. "If a district court's dismissal leaves a plaintiff free to file an amended complaint, the dismissal is not considered a final appealable order." *Ordower v. Feldman*, 826 F.2d 1569, 1572 (7th Cir.1987). However, when the dismissal is "for want of jurisdiction, either of the person or subject matter, or because of improper venue," the judgment is final and may be appealed. 9 L. Moore, B. Ward, & J. Lucas, *Moore's Federal Practice* ¶ 110.08[1], at 113 (2d ed. 1988).

Agreement as a way of obtaining satisfaction of his own claim. At this juncture, he cannot object to collective treatment. Brady can endeavor to secure enforcement of the *Boatman* Agreement; we express no opinion as to the likelihood of his success.

 We remark, in passing, upon Judge Williams's ruling that *Boatman I* had been dismissed pursuant to Fed.R.Civ.P. 41(a)(2), and that the *Boatman* court had intended to retain jurisdiction of the case, thus allowing injured class members to seek enforcement of the order.[9] The district court relied upon *McCall–Bey,* 777 F.2d at 1188, where we confirmed that a district judge can dismiss a suit conditionally, yet retain jurisdiction to enforce settlement agreements. *See also United States v. Baus,* 834 F.2d 1114, 1127 (1st Cir.1987) ("[D]istrict courts who enter judgment pursuant to [a settlement agreement] necessarily have the power to mandate compliance with it."). The court's intent to retain jurisdiction need not be explicitly stated, but can be inferred. *McCall–Bey,* 777 F.2d at 1188.

In this case, we believe there is sufficient support for Judge Williams's conclusion that the *Boatman* Agreement was entered pursuant to Rule 41(a)(2) and that the court had intended to retain jurisdiction over it. As the district court noted, the *Boatman* judge presided over the settlement conferences. Moreover, the Agreement specified that the Secretary was to file documentation with the court within a certain time period. Finally, *Boatman* was a class action proceeding, and Fed.R.Civ.P. 23(e) specifies, "A class action shall not be dismissed or compromised without the approval of the court."[10] For these reasons, we concur with the district court's conclusion that the *Boatman* court had intended to retain jurisdiction.

## III. CONCLUSION

Brady has failed to press for judicial review of the administrative denial of his claim for surviving child benefits. We agree with the district court's assessment that Brady's remedy, if any, lay in seeking to enforce the *Boatman* Agreement. For these reasons, the district court's order dismissing *Brady* is hereby

AFFIRMED.

---

9. Had the court maintained its previous determination that *Boatman I* had been dismissed under Fed.R.Civ.P. 41(a)(1)(ii), "the plaintiff could not later complain to the court that the dismissal had been premised on a settlement agreement that the defendant had violated, and ask the court to order the defendant to abide by the agreement." *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185 (7th Cir.1985).

10. One treatise suggests that Rule 41(a)(1) is "not applicable to a class action." 9 C. Wright &

A. Miller's *Federal Practice and Procedure* § 2363, at 153 (1971). *But see In re Phillips Petroleum Sec. Litig.,* 109 F.R.D. 602 (D.Del. 1986); *Larkin Gen. Hosp., Ltd. v. American Tel. & Tel. Co.,* 93 F.R.D. 497 (E.D.Pa.1982).